**UNITED STATES DISTRICT COURT**
**District of Massachusetts**
Case No. 1:04-cv-10917-WGY

JAMES P. KARTELL,
    Petitioner,

v.

BRIAN BURGWINKLE, as he is Deputy Superintendent of
    Pondville Correctional Center, Norfolk, Massachusetts

and

THOMAS F. REILLY, as he is Attorney General
    of the Commonwealth of Massachusetts,
    Respondents

**MEMORANDUM OF LAW IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2254**

**STATEMENT OF PRIOR PROCEEDINGS**

On March 31, 1999, the Essex County Grand Jury in Salem, Massachusetts indicted the petitioner, James P. Kartell, (hereinafter referred to as "the defendant") for the murder in the first degree of Janos Vajda. (Essex County Superior Court No. 9977 CR 0655). The defendant was released on $200,000 cash bail and remained on bail in full compliance with requisite conditions until the conviction.

The case went to trial before Judge Isaac Borenstein and a jury on June 5, 2000 and continued for three weeks. On June 23, 2000, after four days of deliberations, the jury found the defendant guilty of manslaughter. The judge continued the case for sentencing and held the defendant in custody at that point without bail.

On July 19, 2000, the judge sentenced the defendant to serve five to eight years in state prison. The defendant filed a Notice of Appeal and also filed a Motion For Stay Of Sentence on that same day but the judge denied the stay and committed the defendant to incarceration.[1]

---

[1] Both the Appeals Court and the Supreme Judicial Court rejected the defendant's subsequent requests for a stay of sentence pending appeal (Appeals Court No. 2000-J-0563 and S.J.C. No. 2000-SJ-0450), including a second request for relief due to the excessive delay in obtaining the trial transcripts. See, Kartell v. Commonwealth, 437 Mass. 1027, 1027-1028, 776

The appeal was docketed in the Massachusetts Appeals Court on January 24, 2002. After oral argument on November 22, 2002, the Appeals Court issued an opinion on June 30, 2003 affirming the judgment. <u>Commonwealth v. Kartell</u>, 58 Mass. App. Ct. 428, 790 N.E.2d 739 (2003). The defendant timely filed an application for further appellate review to the Massachusetts Supreme Judicial Court. On September 5, 2003, that Court denied the petition. 440 Mass. 1102, 795 N.E.2d 573 (2003). Each of the grounds raised in this petition was specifically presented to and determined by the Appeals Court and was included in the reasons for relief addressed to the Supreme Judicial Court.

The defendant originally sought to submit a memorandum which contained a discussion of the relevant facts but this Court denied the request to submit a memorandum in excess of twenty pages. A detailed recitation of the facts can be found in the original and reply briefs submitted by the defendant to the Massachusetts Appeals Court and the request for further appellate review, submitted to the Supreme Judicial Court.

### GROUNDS FOR HABEAS CORPUS RELIEF

Whether it was a violation of the defendant's federal constitutional rights to due process of law and the free exercise of religion for the judge to have instructed the jury, in response to the prosecutor's attempt to provoke animosity by questioning the defendant about his professed atheism, that they could consider evidence of a witness's religious beliefs in determining the witness's credibility?

Whether it violates the defendant's federal constitutional rights to due process of law and to present a defense for a judge in his jury instructions to permit a jury to conclude that a defendant who acts reasonably in self-defense in inflicting a fatal gunshot wound can nevertheless be found guilty of manslaughter by reason of the use of excessive force solely for inflicting a second fatal wound a few seconds later during the same altercation?

---

N.E.2d 451 (2002). The defendant has remained incarcerated since the jury verdict on June 23, 2000.

2

Whether the exclusion of evidence concerning the past behavior of the decedent which the defendant asserted had influenced his reaction at the time of the altercation, violated the defendant's state and federal constitutional rights to due process of law and to present a defense?

Whether it violated the defendant's federal constitutional right to confront witnesses to admit as an excited utterance statements by an unavailable witness that the defendant habitually carried his weapon in a leg holster rather than, as he had done on the day of the altercation, in a pocket holster, and to use this evidence to construe criminal intent?

Whether the combination of the errors listed above, the admission of irrelevant evidence, and the prosecutor's misconduct with respect to discovery issues and final argument, violated the defendant's federal constitutional right to due process of law?

## ARGUMENT

### I. THE DEFENDANT IS ENTITLED TO RELIEF UNDER THE STANDARDS ESTABLISHED IN 28 U.S.C. § 2254

In order to prevail on a petition for writ of habeas corpus, the petitioner must establish that the state appellate decision which rejected his federal constitutional claims was "contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court" 28 U.S.C. § 2254(d)(1) or was based upon an "unreasonable determination of the facts in light of the evidence presented". 28 U.S.C. § 2254(d)(2). In this case, the Massachusetts appellate courts erroneously applied federal precedent in at least four separate areas and relied on an unreasonable determination of the facts. These errors, both individually and most especially in combination, rendered the defendant's trial prejudicial and fundamentally unfair.

A state court decision is contrary to federal law when the legal analysis employed is the opposite of that used by the Supreme Court on a similar case with indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-413 (2000). If the decision applies the correct legal principle, a writ of habeas corpus should nevertheless issue where the Court has unreasonably applied that principle to the facts. Wiggins v. Smith, 123 S.Ct. 2527, 2534-2535 (2003). It is not enough that the state court

3

was simply wrong. The conclusion must be "objectively unreasonable." Yarborough v. Gentry, 124 U.S. 1, 4 (2003). The state decision cannot be considered unreasonable if the issue is close. McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002). A state court acts unreasonably if it fails to appreciate how the principle should apply in a particular factual situation, Wiggins v. Smith, 123 S.Ct. 2527, 2538-2539 (2003), or if it dismisses as harmless errors which must reasonably be considered to have had a prejudicial impact. Norton v. Spencer, 351 F3d 1, 8-9 (1st Cir. 2003). McNeil v. Middleton, 344 F.3d 988, 999 (9th Cir. 2000).

In this case, the Appeals Court addressed all of the issues raised in this petition but found each of them wanting. Commonwealth v. Kartell, 58 Mass. App. Ct. 428, 430-438, 790 N.E.2d 739 (2003). That determination was objectively unreasonable. Although the credibility of the defendant was the critical issue in the case, the Court excused an erroneous jury instruction which allowed the jury to consider the defendant's lack of a religious belief in evaluating his veracity. (Argument II). The Court permitted the jury to base a conviction on an erroneous theory, contrary to established principles on the use of deadly force in self-defense. (Argument III). Based upon a flawed understanding of the rationale for permitting a defendant to fully explicate his state of mind at the time of his actions in self-defense, the Court upheld the exclusion of critical evidence. (Argument IV). Contrary to the requirements of the confrontation clause, the Court found no error in the admission of unreliable hearsay as an excited utterance. (Argument V). All of these errors, individually and in combination with other flaws in the trial, had a substantial and injurious effect on the jury's determination. (Argument VI).

### II. THE PROSECUTOR'S PROVOCATIVE EXPLOITATION OF THE DEFENDANT'S LACK OF RELIGIOUS BELIEF AND THE TRIAL JUDGE'S INSTRUCTION PERMITTING THE JURY TO USE THIS INFORMATION TO EVALUATE THE DEFENDANT'S CREDIBILITY VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS

There was no legitimate reason for introducing the defendant's personal religious beliefs as evidence. Contrary to the determination of the Massachusetts Appeals Court, Commonwealth v. Kartell, 58 Mass. App. Ct. 428, 434-438, 790 N.E.2d 739 (2003), that was simply not a relevant subject on any issue in the case. The prosecutor used the defendant's reference to Vadja by the

4

pejorative "Super Jew" as an excuse to disparage the defendant's lack of religious affiliation. The defendant explained that this term was merely his way to expose the contrast between Vadja's actions and the moral principles Vadja claimed to profess. The real purpose for raising the defendant's atheism was not as a means to challenge this explanation but as a way to provoke animosity against the defendant among the jurors. The defendant's personal beliefs had no bearing on whether he was commenting on Vadja's hypocrisy or was exhibiting jealousy.

Whether or not it was error to admit evidence of the "Super Jew" remark, it was the judge's explanation for the use of that evidence which treaded on forbidden territory. He stated, in essence, that religion or religious beliefs (or, in this case, the lack of religious belief) could be used to evaluate the defendant's credibility. Because such comments infringe on the constitutional right to the free exercise of religion, they have been recognized as error from the early years of Massachusetts jurisprudence, Commonwealth v. Buzzell, 16 Pick. 153, 156 (1834). Commonwealth v. Burke, 82 Mass. 33, 33-34 (1860), and are also specifically prohibited under federal law. Fed. R. Evid. 610. The judge's instruction violated the defendant's First Amendment rights and was particularly prejudicial because it reinforced the animosity the prosecutor sought to engender by his repeated references to the defendant's "atheism" and lack of religious conviction.

The Appeals Court deemed the instruction harmless because of the manner in which the judge responded to trial counsel's objection, Kartell, *supra.*, at 437-438. The judge's statement negating the concept that "belief reflects credibility", Id., does not, however, negate jury consideration of the capacity for telling the truth of one who does not hold a religious belief. That was the fundamental flaw in the instruction which was never corrected in any later instructions.[2]

"A trial judge's duty is to give instructions sufficient to explain the law...", Kelly v. South Carolina, 534 U.S. 247, 256, 122 S.Ct. 726, 733 (2002). Here the jury would likely have understood the instruction to permit them to do precisely what they could not do - assess the defendant's

---

[2]The judge's offer to correct the matter with a subsequent instruction included the same basic flaw and thus would not have been a correction at all. Kartell, *supra.* at 436, n.3. The issue was not mentioned or in any way corrected by the concluding instructions to the jury.

5

credibility based on his lack of a religious belief system. The Appeals Court acknowledged the error of the instruction but its attempt to discount the mistake reflects an unreasonable application of federal law. Ho v. Carey, 332 F.3d 587, 594 (9th Cir. 2003) (Erroneous jury instruction not overcome by counsel's arguments).

The defendant's credibility was the decisive issue in the case. Was he in fact in fear for his life when he used a deadly weapon? The fact that the defendant was convicted of manslaughter and not murder does not establish that the jury found his testimony credible. "All that can be said with certainty about the jury's evaluation of [the defendant's] claim of self-defense is that the jury did not credit his testimony sufficiently to acquit him. Rather, their verdict strongly suggested a negative judgment about [the defendant's] credibility..." McCambridge v. Hall, 303 F.3d 24, 61 (1st Cir. 2002) (Lipez & Cyr, dissenting).

The majority in McCambridge ultimately determined that the exclusion of the particular evidence in that case was unlikely to have effected the jury's evaluation of the defendant's guilt. McCambridge, *supra.*, at 39-42. Here, the comment erroneously directed the jury to evaluate the defendant's credibility based upon his lack of a religious belief. Since the case turned on the jury's evaluation of the defendant's state of mind, the error was prejudicial. Patterson v. Haskins, 316 F.3d 596, 610 (6th Cir. 2003).

### III. SELF-DEFENSE INSTRUCTIONS WHICH PERMITTED THE JURY TO DIFFERENTIATE BETWEEN THE JUSTIFICATION FOR THE FIRST AND SECOND SHOTS CONSTITUTED A VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW

In determining as a matter of law that the actions of one who uses deadly force in self-defense can be compartmentalized into seconds, such that a legitimate defense can be transformed instantaneously into criminal conduct, the Appeals Court has seriously eroded the right of individuals to defend themselves from physical violence. Since that decision conflicts with established Supreme Court precedent, Brown v. United States, 256 U.S. 335, 344, 41 S.Ct. 501, 502 (1921), thereby violating the defendant's constitutional rights, this Court should grant relief.

The Appeals Court characterizes the confrontation between Janos Vadja and the defendant as an "exchange of blows" and that the combatants "traded punches" until the defendant resorted to use of a weapon after Vadja was getting "the better of the fight." Commonwealth v. Kartell, 58 Mass. App. Ct. 428, 429-430, 790 N.E.2d 739 (2003). That is a gross distortion of the actual evidence at trial. To the extent that the opinion relies upon this characterization of the facts, it is clearly and convincingly an unreasonable determination. 28 U.S.C. § 2254(d)(2) and (e)(1).

All of the witnesses who observed any portion of the confrontation saw the defendant cowering in a defensive posture while Vadja inflicted several blows on him with his fists and feet. (Tr.VIII: 178-179, 220; VI: 31, 35).[3] Vadja's fists contained reddened markings consistent with having been used in a battery but the defendant's hands contained no such marks. (Tr.VIII: 53, 61-63; XI A: 74-78). Aside from the gunshot wounds, there was no evidence of other physical trauma to Vadja's body. (Tr.VIII: 61-62). In sum, all of the evidence indicates that the defendant never struck Vadja. There was no dispute that each of the two gunshot wounds were independently fatal. (Tr.VIII: 48-49, 63). Kartell, *supra*. at 430. In these circumstances, where there is little doubt that the defendant was entitled to use some measure of force to defend himself, if the jury has a reasonable doubt whether deadly force was required at least at the time of the first shot, the defendant's discharge of his weapon a second time cannot alone be the basis for a finding of criminal liability.

The Appeals Court relies on the concept that there can be more than one proximate cause of a death to hold that criminal liability for the infliction of each shot can be assessed separately. Kartell, *supra*. at 431. The flaw in this reasoning is the assumption that a defendant's reaction to an attack can be parceled in seconds – the moment that an aggressor ceases his attack, a defender must refrain from any further exercise of force. It is this point which engendered Justice Holmes's remark

---

[3] Any claim that the defendant physically assaulted Vadja is based solely on the excited utterances of Suzan Kamm, as recalled by Carol Brown. Two weeks before trial, Brown changed her account to include statements that the defendant had been "hitting" Vadja. (Tr.VIII 194). This assertion was inconsistent with her earlier statements about what Kamm had said (Tr.VIII 203-205) and inconsistent with what Kamm allegedly said to the police. (Tr.IX 6).

that "[d]etached reflection cannot be demanded in the presence of an uplifted knife." Brown v. United States, 256 U.S. 335, 343, 41 S.Ct. 501, 502 (1921). In reversing a conviction for a flawed self-defense instruction in that case, the Court noted that a defendant who inflicted four shots on the deceased does not necessarily forfeit his claim of legitimate self-defense even if the last shot was intentionally discharged while the victim was down if the shot "followed close upon the others while the heat of the conflict was on and if the defendant believed he was fighting for his life." Id. at 344.

The cases cited by the Court are readily distinguishable. A defendant who shoots a person, who is, in fact, already dead cannot be convicted of homicide. People v. Dlugash, 395 N.Y.S.2d 419, 423, 363 N.E.2d 1155, 1158-1159 (1977). Conversely, a defendant can not be convicted of an attempted murder if he fires a fatal shot into a person, whom the defendant reasonably believes is already dead. Dlugash v. State, 476 F.Supp. 921, 924 (D.C.N.Y. 1979)(Court granted writ of habeas corpus). If a defendant joins with another to cause a death, it does not matter which of the perpetrators' actions accomplished that result. Commonwealth v. Rosado, 434 Mass. 197, 203-204, 747 N.E.2d 156 (2001). Commonwealth v. McLeod, 394 Mass. 727, 744-747, 477 N.E.2d 972, cert. denied sub. nom. Aiello v. Massachusetts, 474 U.S. 919 (1985). A defendant can be liable for his independent acts so long as they are a contributing cause to the death. Commonwealth v. Maynard, 436 Mass. 558, 563-564, 767 N.E.2d 1 (2002). Here, the second shot could not be considered separately because it was not an act which "produced the death and without which the death would not have occurred." Id. at 563, *quoting*, Commonwealth v. Rhoades, 379 Mass. 810, 825, 401 N.E.2d 342 (1980).

In this case, the defendant's actions should have been viewed as a continuum. *See,* People v. Crane, 308 Ill.App.3d 675, 683-684, 721 N.E.2d 657 (Ill.App.Ct. 1999) (jury instructed that the defendant's acts could not be viewed separately) S.C., 145 Ill.2d 520, 528, 585 N.E.2d 99, 102. Oxendine v. State, 528 A.2d 870, 872-873 (Del. 1987). A recent New York case reversed a conviction for manslaughter where the jury had been permitted to base a conviction solely upon the defendant's alleged excessive force inflicted after the fatal wound, although the argument was raised

for the first time on appeal. People v. Carrera, 282 N.Y.A.D. 614, 615-616, 725 N.Y.S.2d 344 (2001).

The fundamental flaw in the Appeals Court's analysis is illustrated by an Arkansas case which reversed a conviction for failure to present a self-defense instruction. Humphrey v. State, 332 Ark. 398, 410-412, 966 S.W. 2d 213, 219-220 (1998). Although the defendant had shot the victim fourteen times, where there was evidence that the victim sustained at least one fatal shot in circumstances which could be characterized as self-defense, "any [subsequent] use of excessive force would not be relevant." Humphrey, supra., 332 Ark. at 412, 966 S.W.2d at 220. The state had the burden to show that it was the alleged excessive force, and not the initial response, that caused the death of the victim. Humphrey, supra., 332 Ark. at 413-414, 966 S.W.2d at 221. The instructions in this case never made that distinction.

An instructional error which effectively precludes a proper evaluation of the defendant's claim of self-defense, violates the defendant's rights to due process of law by infringing his rights to a fair trial and to present a defense under the Fifth and Sixth Amendments. Kelly v. South Carolina, 534 U.S. 247, 256, 122 S.Ct. 726, 733 (2002) ("A trial judge's duty is to give instructions sufficient to explain the law..."). McNeil v. Middleton, 344 F.3d 988, 995-997 (9th Cir. 2003) (Error in self-defense instruction required grant of petition for writ of habeas corpus). Reversal of the conviction is required if the error had a substantial or injurious effect or influence on the verdict. Id. Here, the Appeals Court recognized that in light of the jury instruction which emphasized that the proper exercise of self-defense "ends when necessity ends", (Tr.XI 136, 140), the jury could have decided this case based solely on the second shot. Kartell, supra., at 431. That likelihood was enhanced when the prosecutor took advantage of potentially different interpretations of the defendant's actions to argue in his closing that, whatever the justification for the initial shot, there was no necessity for the use of the second shot. (Tr.XI: 78-79, 82).

In light of his medical history and the relentless nature of Vadja's attack, the defendant had no other recourse but to employ deadly force. The implications for the erosion of the right to self-defense for others faced with a similar dilemma are daunting. A homeowner who confronts a burglar

9

in his own home could be charged with homicide for use of deadly force for discharging his weapon after the time when it is later determined that no further response was necessary. A battered spouse who fends off an attack can nevertheless be charged with a crime for not stopping a defensive response at the precise moment that the batterer relents.

The argument of the prosecutor and the absence of any corrective jury instruction combined to allow the jury to artificially sever an event which evolved suddenly and allowed the jury to focus on the defendant's final act when that act did not cause, or appreciably hasten, Vadja's death. Where a case is submitted to a jury on alternate theories, and one of those theories is erroneous, the error cannot be considered harmless. Ho v. Carey, 332 F.3d 587, 595-596 (9th Cir. 2003). Since the entire case turned on whether the defendant was justified when he inflicted the fatal shots, the absence of a clarification concerning the limitations on the use of deadly force in self-defense, constituted fatal constitutional error. Patterson v Haskins, 316 F.3d 596, 609-610 (6th Cir. 2003) (An instruction on the elements of the crime which is contrary to federal law requires allowance of the defendant's petition for writ of habeas corpus).

### IV. EXCLUSION OF EVIDENCE CONCERNING PRIOR CONDUCT OF THE VICTIM WHICH DEMONSTRATED THE VICTIM'S PENCHANT FOR UNJUSTIFIED CRUELTY VIOLATED THE DEFENDANT'S FEDERAL CONSTITUTIONAL RIGHTS

As a general rule, a defendant asserting self-defense in a homicide case is allowed to introduce evidence known to him concerning the victim's dangerous or quarrelsome nature to the extent that such information may demonstrate the reasonableness of the defendant's apprehension for his own safety. Commonwealth v. Benjamin, 430 Mass. 673, 679, 722 N.E.2d 953 (2000). Any evidence tending to show that the defendant had reasonable cause to apprehend greater harm from the conduct of the deceased is admissible. Smith v. United States, 161 U.S. 85, 88, 16 S.Ct. 483, 484 (1896). Since an "essential component of procedural fairness is the right to be heard", Crane v. Kentucky, 476 U.S. 683, 690-691, 106 S.Ct. 2142, 2146-2147 (1986), exclusion of competent, reliable evidence bearing on an issue which is central to the defense, violates the defendant's

constitutional right to due process of law. Id., Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038 (1973).

In this case, the judge did allow some evidence about Vadja's character: that he was a womanizer, was not industrious, and had infected the defendant's wife with an incurable venereal disease. (Tr.V C: 32). However, the judge excluded testimony about Vadja's prior cruel behavior towards his daughter and evidence concerning a restraining order Vadja's ex-wife had taken out against him. (Tr.V C: 40-41, 44). The defendant had learned of these acts during a conversation with Klara Vadja, and in his examination of Probate Court records, just a few months before the shooting. (Tr.IX A: 19-24, 27). The Appeals Court held that the trial judge could properly exclude the information, which the defendant claimed influenced his reaction, on the grounds that it was too remote. In so holding, the Appeals Court misconstrued the purpose this evidence served.

Since the central reason for admitting character evidence of this type is to demonstrate what was on the defendant's mind, it can only be considered remote if no reasonable person could likely have been influenced by it. The evidence must not be assessed simply on the court's view of whether such information should have caused concern. Commonwealth v. Woodward, 102 Mass. 155, 161-162 (1869). Information concerning the braid incident and the actions which justified a restraining order were not sought to demonstrate Vadja's "propensity for violence" Kartell, *supra.* at 432, but Vadja's potential for uncontrolled savagery once stirred to anger. In this context, the time of the underlying incidents or their connection to violence, *per se,* was unimportant. Rather, the critical consideration was what these events demonstrated concerning Vadja's capacity to lose control once aroused.

Allowing the defendant to say that he became fearful from what he heard but not saying what caused that reaction removes the assertion from all context. The jury knew only that Vadja, in previous encounters with the defendant, had acted with restraint. Thus they may have been enticed to view with skepticism the defendant's claim to have feared for his life.

That interpretation could have been different had the jury heard that Vadja's ex-wife had become so fearful of him that she obtained a restraining order and that Vadja had cut off his young

11

daughter's braid simply because she could not understand her math homework. A man capable of such acts was capable of inflicting serious bodily harm or death on the one who, not only was the rival for his love interest, but who also had offended Vadja's manhood in front of his paramour. The jury were not permitted to know the pervasive image in the defendant's mind of a person who could overreact with malicious cruelty.

The defendant's perception of his opponent's character and reputation is critical in evaluating the defendant's asserted belief that deadly force was required. Commonwealth v. Tircinski, 189 Mass. 257, 257-259, 75 N.E. 261 (1905). People v. Goetz, 506 N.Y.S.2d 18, 29 (1986). The defendant testified that what he had been told by Klara Vadja and what he learned about Janos Vadja's past behavior was on his mind while he was enduring the attack. The prosecutor exploited the exclusion of this evidence by arguing in his closing that the defendant had "no concerns whatsoever that Janos Vadja is going to be violent to him in any way" (Tr.XI: 65-66) and "never had a reason to be afraid of Vadja" (Tr.XI: 68). He could not have done so if this evidence had been admitted.

In similar contexts, other jurisdictions have determined that evidence concerning the victim's character was erroneously excluded despite assertions that the evidence was too remote. DePetris v. Kuykendall, 239 F.3d 1059, 1062-1063 (9th Cir. 2001) (Exclusion violated due process where it precluded defendant from testifying fully about her state of mind). Brand v. State, 766 N.E.2d 772, 777-781 (Ind.App. 2002) (Manslaughter conviction reversed where court excluded evidence which the defendant claimed had caused him to fear for his life). State v. Collins, 793 A.2d 1160, 1165, 1169 (Conn.App. 2002) ("The jury needs all relevant and material information to assess the subjective fear of the defendant."). Gomar v. Commonwealth 2004 WL 314625 (Ky., 2/19/2004) (Error to exclude hearsay information conveyed to the defendant about alleged victim's violent past). United States v. Burks, 470 F.2d 432, 434, n.3 (D.C.C.A. 1972) (Victim's past cruel conduct admissible where defendant stated that "if he could beat his six-year old boy to death, then he

probably wouldn't hesitate to beat me to death, too"). In this case, the excluded evidence presented the defendant with an ominous illustration of Vadja's cruel nature.

The government may avoid the implications of an unreasonable exclusion of relevant evidence in the context of a habeas claim by demonstrating that the error was harmless. That requires consideration of a number of factors: (1) the importance of the testimony; (2) whether it was cumulative; (3) presence or absence of other contradictory or corroborative information; (4) the extent that other evidence established a similar point; and (5) the strength of the government's case. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1437 (1986). Here, the evidence was directed to the critical issue at trial, there was no similar comparable evidence admitted, and the government's case, on this point, was effete. Thus the error cannot be considered harmless. United States v. Shay, 57 F.3d 126, 134 (1st Cir. 1995). There was no other evidence introduced at trial that indicated Vadja was capable of cruel conduct. Amarok v. State, 671 P.2d 882, 884 (1983) (finding harmful error where judge excluded evidence of victim's violent acts and no other evidence at trial suggested the victim had a propensity for violence). While the jury heard the defendant assert that he feared for his life, they were only permitted to consider a fragmented version of the reasons for his fear. *Compare,* Crane v. Sowders, 889 F.2d 715, 718 (6th Cir. 1989) (Habeas granted where the defendant was prevented from presenting a comprehensive picture of his version of events). In these circumstances, exclusion of this evidence was an unreasonable and prejudicial application of federal law. Norton v. Spencer, 351 F.3d 1, 8-9 (1st Cir. 2003).

### V. ADMISSION AS AN EXCITED UTTERANCE OF THE UNAVAILABLE WITNESS'S BELIEF THAT THE DEFENDANT HABITUALLY CARRIED HIS WEAPON IN A LEG HOLSTER VIOLATED THE DEFENDANT'S FEDERAL CONSTITUTIONAL RIGHT TO CONFRONT ADVERSE WITNESSES

Suzan Kamm asserted her privilege as the defendant's spouse to decline to testify at the trial. The Commonwealth sought to admit as excited utterances several statements she had made to hospital personnel and to a police officer shortly after the shooting. (R.A. 57-61). One of the statements admitted over the defendant's objection was Kamm's assertion that the defendant usually

carried his gun on his leg but this time had it in his pocket. (R.A. 58). This evidence was admitted in the Commonwealth's case and was the only evidence that the defendant typically carried the gun in any particular location. (Tr.VIII: 195). In his testimony, in rebuttal to this assertion, the defendant said that he carried the gun every day, sometimes in a leg holster but mostly in his pocket. (Tr.IX A: 6-7).

In Crawford v. Washington, 124 S.Ct. 1354 (2004), the United States Supreme Court has articulated a far narrower limitation on the kinds of evidence which can be admitted from individuals who are not subject to cross-examination than at least some courts have previously believed. Even under prior law, before this most recent decision, admission of the hearsay statement concerning an alleged habit was clearly contrary to settled federal precedent. Evidence which is admitted under an exception to the hearsay rule does not necessarily satisfy the requirements of the Sixth Amendment confrontation clause. United States v. Venture-Melendez, 275 F.3d 9, 15 (1st Cir. 2001). Hearsay rules and the confrontation clause protect similar values and thus a "firmly-rooted" exception generally satisfies the reliability requirement of that provision. White v. Illinois, 502 U.S. 346, 352-353, 355, n. 8, 112 S.Ct. 736, 740-743 (1992). An exception is considered to provide the particularized guarantee of trustworthiness required if it is such that cross-examination of the declarant would be of marginal utility. Idaho v. Wright, 497 U.S. 805, 819-822, 110 S.Ct. 3139 (1990).

Even if the excited utterance exception is considered to be firmly rooted, that does not mean that anything said during a time of excitement is admissible. Brown v. Keane, 355 F.3d 82 (2nd Cir. 2004) (Unreasonable application of federal law to admit anonymous call to 911 as excited utterance where statement based on conjecture). Whenever the exciting event produces contemplation of past experiences it may result in distortion of actual past recollections. Here, for example, Kamm may have based her conclusion on limited or stale observations. The defendant was unable to cross-examine the witness on how she came to the conclusion that such a habit existed.

In the Crawford decision, the Supreme Court explained that the Sixth Amendment's confrontation clause prohibits the admission of testimonial evidence from absent witnesses, unless

14

the witness is presently unavailable and the defendant has had a prior opportunity to cross-examine. The only exceptions to this rule are hearsay exceptions which involve non-testimonial evidence or which were in existence at the time of the founding of the Constitution. Id. at 1365-1367. The Court did not explicitly address spontaneous utterances other than to note that, if they were in existence at all at the relevant time period, they were limited to statements made "immediately upon the hurt received" and before the declarant had time to devise or contrive anything. Id. at 1368, n.8.

The statements to which the defendant objected are certainly testimonial statements from an unavailable witness. Like the witness in Crawford, Kamm's testimony was precluded by the marital privilege. Her statement concerning the defendant's habitual behavior with respect to where he carried his gun is a statement about a fact which is offered for the truth of the assertion. It was not uttered immediately at the scene but was articulated to hospital personnel as a description of her reactions to what she had witnessed. The purpose of the confrontation clause, as explicated by Crawford, is to bar the admission of statements from witnesses who have not been subjected to cross-examination. Kamm's recollection about the defendant's past behavior is barred by that principle.

Moreover, the Kartell decision ignores the fundamental requirement that an excited utterance cannot be admitted if is excludable on other grounds. Commonwealth v. King, 436 Mass. 252, 255, 763 N.E.2d 1071 (2002). Commonwealth v. Santiago, 437 Mass. 620, 627, n. 4, 774 N.E.2d 143 (2002). The Massachusetts Appeals Court failed to appreciate that the statement became material only to the extent that it recounted otherwise inadmissible evidence concerning alleged habitual conduct. Suzan Kamm's statement that the defendant had deviated from his usual habit concerning where he carried his gun necessarily subsumes the existence of a habit. It is this alleged fact which was improperly established.

Prior to the Crawford opinion, to evaluate whether the admission of particular hearsay evidence violates the confrontation clause, the Court would examine for the presence of four factors: (1) there is no express assertion of past facts; (2) the declarant is in a position to have personal knowledge; (3) the possibility that the statement is based on faulty recollection is remote; and (4) the

15

circumstances when the statement was made make misrepresentation remote. United States v. Ventura-Melendez, 275 F.3d 9, 16 (1st Cir. 2001) *citing,* Dutton v. Evans, 400 U.S. 74, 88-89, 91 S.Ct. 210 (1970). In this case, the assertion concerns past events, it is questionable whether Kamm had personal knowledge, and Kamm, having just seen her lover shot, may have drawn a conclusion based on distorted recollections or acted out of a motive to distort her past experience to imply that the defendant had altered his usual pattern of behavior. In this circumstance, cross-examination could well have made a difference. The erosion of traditional evidentiary restrictions on hearsay in this context violates the defendant's federal constitutional rights. Commonwealth v. Bianchi, 435 Mass. 316, 324, 757 N.E.2d 1087 (2001).

Where hearsay evidence has been erroneously admitted, a new trial is required unless the jury could not have been influenced by the error. Commonwealth v. Bianchi, 435 Mass. 316, 324 (2001). Commonwealth v. Magraw, 426 Mass. 589, 599, 690 N.E.2d 400 (1998). The prosecution used the habit evidence to suggest that the defendant had altered his usual pattern of behavior so that the gun would be readily available if the defendant either initiated or provoked a confrontation with Vadja. (Tr.XI: 65). This evidence might well have affected the jury's evaluation of the critical issue in the case - the reasonableness and spontaneity of the defendant's actions. Therefore, it could not be considered harmless. *See,* Brown v. Keane, 355 F.3d 82, 92 (2nd Cir.2004) (Admission of hearsay not harmless where evidence related to important issue and prosecutor used it in final argument). Crawford v. Washington, *supra,* at 1372-1374 (Reversible error where hearsay exploited by prosecutor to cast doubt on credibility of defendant's claim of self-defense).

### VI. THE COMBINED EFFECT OF THE ERRORS IN THE JURY INSTRUCTIONS THE ADMISSION AND EXCLUSION OF EVIDENCE AND IMPROPER ARGUMENTS BY THE PROSECUTOR RENDERED THE TRIAL MANIFESTLY UNFAIR

The Appeals Court dismissed other issues raised by the defendant in a footnote. Kartell, *supra.* at 430, n.1. The factual basis for these arguments is summarized below. While individually these issues may not have constituted reversible error, in combination they rendered the trial

prejudicial and patently unfair. Killion v. Poole, 282 F.3d 1204, 1211 (9th Cir. 2002) (cumulative effect of errors can require reversal).

In a discovery order entered before trial, the judge ordered the prosecution to provide the defense with any statements of witnesses which have been reduced to writing. (R.A. 15, 17). At a hearing on the Tuesday before the start of trial, Carol Brown testified to several statements made by Suzan Kamm that had not been included in Brown's previously disclosed statements. (Tr. 5/30/00: 30-32). Further inquiry established that the prosecutor had been aware of at least some of the new statements but had not disclosed the additions, one of which was Brown's claim that Kamm had said the defendant was repeatedly hitting Vadja. (Tr.5/30/00: 166-167, 176-179).[4]

The judge denied defense counsel's request to exclude any new statements on this ground. When the prosecutor later mistakenly claimed on the day before trial that the defense had failed to supply some supplemental discovery, the judge reiterated that he expected both parties to strictly comply with the order and that it was "meant to not only apply literally but spiritually, for the purpose of discovery." (Tr. 6/1/00: 74-75).

During the sixth day of trial, nurse Kristina Collins gave an account of when she saw Dr. Kvarternik in relation to hearing the gunshots which differed from the statement she had made as recorded by a state trooper. (Tr.VI: 91-93, 98). The prosecutor had become aware of this variance the previous day but had not disclosed it to defense counsel. (Tr.VI: 102-103). The next witness, Michael Bryant, also recounted a change in his recollection: he was now uncertain, despite his previous statements and grand jury testimony, that he had seen the defendant holding Vadja in a headlock. (Tr.VI B: 11).

When Bryant made this statement, defense counsel asked for a voir dire. (Tr.VI B: 12-13). The judge ordered the prosecutor not to speak to the witness during the short break in testimony. (Tr.VI B: 14-15). During the break, however, the prosecutor did respond to the witness's query and

---

[4]The prosecutor emphasized this statement in his closing argument. (Tr.XI: 69).

told him the purpose of the voir dire. (Tr.VI B:15-16). At first, Bryant denied speaking to the prosecutor at all but upon further inquiry acknowledged that they had conversed. (Tr.VI B: 17-18).

Bryant revealed in the voir dire that he had met with the prosecutor two weeks before trial and told him about his altered recollection. (Tr.VI B: 21-23). The prosecutor confirmed this account. (Tr.VI B: 30). The judge denied defense counsel's motion for a mistrial because of this and the other breaches of the discovery order. (Tr.VI B: 34-36). He informed the jury that if they determined that discovery had not been timely provided, they could consider that fact in assessing a witness's credibility. (Tr.VI B: 35-36).

On the following day, defense counsel again moved for a mistrial or other sanctions because of the deception and the discovery violations. (Tr.VII: 3-18). The judge found that the prosecutor had not acted deliberately to deceive the defendant. (Tr.VII: 8-11). He also barred counsel from informing the jury that during the voir dire Bryant had initially denied that he had spoken to the prosecutor during the break. (Tr.VII: 13-17).

Before trial, the defendant sought to exclude evidence of a hospital policy that no one was permitted to carry firearms on hospital grounds. (R.A. 27-28). The judge denied the motion and admitted the policy as an exhibit, although there was no evidence that the defendant had ever known about it and the defendant renewed his objection on that ground. (Tr.IV A: 15-16, 33; IV: 66-67).

William Lane, who had been president of Holy Family Hospital for the past 28 years, explained that the policy was established in 1992 and had remained in force since that time. (Tr.IV A: 3, 15-16). The defendant had been a staff member of the hospital since 1974 and had served as president of the medical staff in the mid-1980's, but he was "never a heavy user of the hospital." (Tr.IV A: 14). His affiliation diminished in the 1990's to the point that he admitted only one patient during the three year period from 1996 through 1998. (Tr.IV A: 22).

Lane was not certain whether the weapons policy had ever been generally distributed to staff, short of distribution to various departments for placement in an office policy manual. (Tr.IV A: 32-33). He had no information from any source that the defendant had ever been made aware of the

policy. (Tr.IV A: 25, 33). It was only after this incident that the Hospital distributed the policy to all staff and posted signs at the entrances. (Tr.IV A: 23-24, 27).

The admission of a hospital policy banning the carrying of guns and the prosecutor's conduct in flouting his discovery obligations and arguing facts not in evidence all tended to reinforce the distorted prosecutorial version of the incident as a planned event orchestrated by a cuckolded husband inflamed by jealousy. In final argument, the prosecutor talked about the defendant as having "stalked" his wife. He referred to the defendant as "packing" a gun concealed in a "secret pocket" and claimed that the defendant had changed into "baggy" pants which contained a spot for "backup ammunition." He asked the jury to speculate that the amount of alcohol in the defendant's blood indicated that he had consumed more than one drink of alcohol as "fortification." (Tr.XI: 54, 58, 60, 65-67).

None of these speculative characterizations were supported by any evidence at trial. "Stalking" is a defined legal term which denotes criminal behavior involving a pattern of conduct to cause emotional distress or threats. Commonwealth v. Alphas, 430 Mass. 8, 12-15, 712 N.E.2d 575 (1999). There was no testimony that the defendant had ever done anything of the sort nor was there evidence concerning the nature of the defendant's pants, other than that it contained an ordinary watch pocket, or about the implications of the percentage of alcohol in the body (here, .035) on how many drinks might have been consumed.

From these multiple improper inferences the prosecutor concocted a theory that the defendant arranged a fatal confrontation when, in fact, the only reasonable view of the evidence was that this was a sudden, unplanned altercation. The exclusion of evidence concerning the defendant's reasons for fearing the defendant and the admission of evidence that the defendant may have altered his usual pattern, thereby making his gun more accessible, reinforced the prosecutor's theme. The emphasis on the second shot and use of a lack of religious belief to cast doubt on the defendant's credibility and concomitantly provoke animosity against him, unfairly directed the jury to assume some level of criminal culpability. In combination, this may have induced the jury to arrive at a manslaughter verdict rather than to return a verdict of not guilty.

Even if constitutional errors are not deemed so harmful as to individually mandate reversal, in combination they may produce "an inherent synergistic effect" which causes prejudice. Cargle v. Mullin, 317 F.3d 1196, 1221 (10th Cir. 2003). The errors must be examined in the aggregate to determine whether they had a substantial and injurious effect or influence on the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.Ct. 1710 (1993). Here, it was unreasonable for the Appeals Court to hold that the individual errors and, most especially the combination of errors, did not cause prejudice. Killian v. Poole, 282 F.3d 1204, 1211 (9th Cir. 2002). *Contrast,* Mello v. DiPaulo, 295 F.3d 137, 151-152 (1st Cir. 2002).

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for writ of habeas corpus.

Respectfully submitted,
For JAMES P. KARTELL

*/s/ Michael J. Traft*

MICHAEL J. TRAFT
B.B.O.# 501480
Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
(617) 338-5566

May 13, 2004

### CERTIFICATE OF SERVICE

I, Michael J. Traft, hereby certify that on May 13, 2004, I served a copy of this document by first class mail to: Brian Burgwinkle, Deputy Superintendent, Pondville Correctional Center, P.O. Box 146, Norfolk, MA 02056 and Thomas F. Reilly, Attorney General, Commonwealth of Massachusetts, One Ashburton Place, 20th Floor, Boston, MA 02108.

*/s/ Michael J. Traft*

Michael J. Traft